# UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

MARC DOUGLAS YOCUM,

     Plaintiffs,

     vs.

KOOTENAI COUNTY, et al.,

     Defendants.

Case No. CV09-546-REB

**MEMORANDUM DECISION
AND ORDER**

Pending before the Court is Defendants' Motion for Summary Judgment (Dkt. 21). Defendants argue that Plaintiff has no claims that can survive summary judgment stemming from (1) his registration in Idaho as a sexual offender from 2004 to 2008 or (2) a December 2007 arrest. Having carefully reviewed the record, considered oral arguments, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  BACKGROUND

On March 3, 1997, Plaintiff Marc Yocum was convicted of attempted second degree sexual assault in Alaska. Compl., ¶ 7 (Dkt. 1); Mumford Aff., Ex. A (Dkt. 21-6). Plaintiff alleges that the judge who entered his conviction told Plaintiff he did not have to register as a sex

offender in Alaska because attempted sexual assault is not a registerable offense. Compl.[1], ¶ 7; Pl.'s Aff., ¶ 6 (Dkt. 24-2). After his conviction, Plaintiff moved to Eugene Oregon, where he was required to register as a sex offender. Defs.' St. of Fact, p.1 (Dkt. 21-1). In October 2003, Plaintiff moved from Oregon to Idaho where he began residing with his parents in Kootenai County. Compl., ¶ 7; Defs.' St. of Fact, p.2.

Plaintiff's parole officer, Cindy Boyle, informed the Kootenai County Sheriff's Department that Plaintiff had an active warrant from Oregon for failure to register as a sex offender. Defs.' St. of Fact, p.2. Here, the facts diverge. Plaintiff alleges that, when he arrived in Idaho, Officer Boyle told him to check in with the Kootenai County Sheriff's Office to determine whether he was required to register as a sex offender. Compl. at ¶ 8; Mumford Aff., Ex. C, p.79 (Dkt. 21-6). He alleges that he was referred to the Idaho Department of Transportation, but when he reviewed the list of registerable sex offenses, Plaintiff felt that none of the offenses resembled the attempted sexual assault crime he had been convicted of. *Id.* Defendant Kent Johnston, a Kootenai County Sheriff's Department Sergeant, avers that Plaintiff told him he was unaware that he was required to register as a sex offender and that he was never instructed to do so by Officer Boyle. Defs.' St. of Fact, p.3. Plaintiff's Affidavit opposing summary judgment is silent on whether his parole officer informed him that he should register. *See* Dkt. 24-2.

Sergeant Johnston told Plaintiff he had to register as sex offender, after Plaintiff was brought to the Kootenai County Public Safety Building by a deputy sheriff following Johnston's

---

[1] Plaintiff's Complaint is not verified so the Court has not relied on the statements therein as factual evidence in determining the issues presented for summary judgment; the Complaint is cited in the Background section only to explain the different versions of the facts alleged.

**MEMORANDUM DECISION AND ORDER - 2**

review of Idaho's Sexual Offender Registration Notification and Community Right-to-Know Act, Idaho Code 18-8301, *et seq*, (the "Registration Act"). Compl at ¶ 9; Defs.' St. of Fact, p.3; Pl.'s Aff., ¶ 7. Idaho's sexual offender registration requirement applies to "a person who has been convicted of any crime [or attempt] . . . to commit a crime in another state, territory, commonwealth, or other jurisdiction of the United States, that is 'substantially equivalent' to one of the offenses in the state of Idaho that require registration." Idaho Code § 18-8304(1)(b). Sergeant Johnston's duties included enforcing provisions of the Registration Act and he reviewed Plaintiff's National Crime Information Center report and concluded that Plaintiff's Alaska conviction was substantially equivalent to an Idaho crime that required sexual offender registration.[2] Defs.' St. of Fact, p.2. According to Plaintiff, he explained to Johnston that his Alaska conviction did not match an offense on the list of registerable offenses, but Johnston told Plaintiff he would be charged with a felony if he did not register. Compl. at ¶ 9; Pl.'s Aff., ¶¶ 7-8.

Thereafter, Plaintiff registered as a sex offender in Idaho from late 2003 or early 2004 until 2008. Compl. at ¶ 9; Defs.' St. of Fact, p.3; Pl.'s Aff., ¶ 9. Plaintiff alleges he received "regular phone calls" from Deputy Dale Johnson accusing Plaintiff of failing to submit quarterly reports and that, in December 2008, Deputy Johnson called and accused Plaintiff of battery and burglary. Compl., ¶¶ 11, 13; *see also* Pl.'s Aff., ¶¶ 11, 13. Each year Plaintiff contacted the Idaho Department of Transportation to ask that it review his status as an offender required to

---

[2]  The sheriff of each county is required to "provide written notification, on a form provided by the Idaho transportation department and approved by the attorney general, of the registration requirements of this chapter to any person who enters this state from another jurisdiction and makes an application for an identification card or a license to operate a motor vehicle in this state." Idaho Code § 18-8306(4).

register.[3]  Compl. at ¶ 10; Pl.'s Aff. at ¶ 10.  On May 23, 2008, Plaintiff received a letter from

the Idaho State Police, Department of Idaho Central Sex Offender Registry, which advised

Plaintiff that he did not have to register as a sex offender in Idaho.  Compl. at ¶ 12; Defs.' St. of

Fact, p.3.  Plaintiff alleges claims related to these events, and also stemming from a December

2007 arrest.  The claims appear to be tied together by Plaintiff's claim that he was discriminated

against because of his criminal history and sexual offense registration in Idaho.

   In December 2007, Kootenai County Deputy Charles Sciortino pulled Plaintiff over for

speeding and arrested Plaintiff for driving without privileges and driving under the influence.

Defs.' St. of Fact, p.3; Pl.'s Aff., ¶ 15.  Deputy Sciortino removed Plaintiff's personal items

during the arrest.  Defs.' St. of Fact, p.3.  Plaintiff alleges that Deputy Sciortino allowed a

passenger in Plaintiff's car to keep a $100 bill that belonged to Plaintiff and that Sciortino

stopped by Plaintiff's home on the way to the jail and told Plaintiff's neighbors that Plaintiff is a

"child molester."  Pl.'s Aff., pp. 4-5.  Defendants assert that Plaintiff had $137.74 in cash and

coin in his person and that Deputy Sciortino did not take any money from Plaintiff at the time of

his arrest.  Defs.' St. of Fact, pp. 3-4.  Plaintiff also alleges that Sciortino sexually harassed

Plaintiff, verbally and physically, after his arrest.  *Id.*, at pp. 5-6.

---

[3]  The Idaho Administrative Procedure Act at Title 10, Chapter 3, provides a procedure
for persons registered under the Registration Act to submit a written request "to correct or
modify information regarding that person in the central registry for the purpose of making the
information accurate and complete."  The record does not indicate whether Plaintiff followed
this procedure in his attempts to clarify whether he was required to register as a sexual offender.

**MEMORANDUM DECISION AND ORDER - 4**

Plaintiff brings claims under 42 U.S.C. §§ 1983 and 1988, for violations of his rights to due process and equal protection and his rights under the Constitution. Compl., ¶ 1. Defendants have moved for summary judgment on all claims.

## II. DISCUSSION

**A.    Summary Judgment Standards**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut, but is instead the principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *Id.* at 248.

The moving party bears the initial burden demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc ). To carry this burden, the moving party need not introduce any affirmative evidence, but may simply point out the absence of evidence to support the non-moving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his or her favor. *Id.* The non-moving

party must go beyond the pleadings and show by affidavits or by discovery or disclosure materials that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 324.

**B.      Initial Matters**

At the hearing of this matter, Plaintiff's counsel advised that Plaintiff would not continue to pursue claims against Kootenai County and the Kootenai County Sheriff, Rocky Watson. Accordingly, all of the claims against the County and Sheriff are dismissed, with prejudice. Plaintiff's claims, therefore, will be discussed only in relation to the three remaining Defendants: Officers Kent Johnston, Dale Johnson, and Charles Sciortino.

**C.      Claims Under 42 U.S.C. § 1983**

Under 42 U.S.C. § 1983, a person may bring an action against a government employee who, acting under color of law, "subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." *Fontana v. Haskin*, 262 F.3d 871, 878 (9th Cir. 2001). Defendants acknowledge that they are state actors for purposes of Section 1983, but challenge whether any of Plaintiff's rights were violated. Defs.' Mem., p.2 (Dkt. 21-2).

**1.      Equal Protection**

Plaintiff's equal protection claim is based on his allegations that Defendants falsely accused him of being a child molester, required him to register as a sex offender even though he was not legally required to do so, misappropriated his money, and sexually harassed and assaulted him. Compl., ¶ 19. The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, §

**MEMORANDUM DECISION AND ORDER - 6**

1.    "The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe,* 457 U.S. 202, 216 (1982)).  "In order to claim a violation of equal protection in a class of one case, the plaintiff must establish that the [Defendants] intentionally, and without rational basis, treated the plaintiff differently from others similarly situated." *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).  "A class of one plaintiff must show that the discriminatory treatment 'was intentionally directed just at him, as opposed ... to being an accident or a random act.'" *Id.* (quoting *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001)).

         Here, Plaintiff has not alleged that he is a member of a protected class or articulated any basis for a claim of disparate treatment from others similarly situated.  Accordingly, Plaintiff has not stated a claim for relief under the Fourteenth Amendment for violation of the Equal Protection Clause.  *See, e.g.*, *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (noting minimum requirements for "class of one" theory in equal protection context require allegation that others similarly situated were treated differently); *Navarro v. California*, No. CIV S-08-2562 JAM EFB PS, 2010 WL 366633, *10-11 (E.D.Cal., Jan. 25, 2010) *unpublished* (concluding that the plaintiff did not state an equal protection claim where he contended that, despite reversal of his conviction on October 9, 2007, he was not released from the sexual offender registry until June 6, 2008); *Spady v. Hudson*, Civ. No. 06-427-SLR, 2008 WL 697714, *2 (D.Del. Mar. 14, 2008) *unpublished* (explaining that the plaintiff's equal protection claim failed as a matter of law because he failed to allege that he was the only one forced to sign the registry form or that his information was the only posting that did not receive "auditing" on the

offender registration website).  Accordingly, Defendants are entitled to summary judgment in their favor on Plaintiff's equal protection claim.

**2.      Claims Related to Sexual Offender Registration**

Plaintiff argues that Defendants Johnston and Johnson violated his rights when Johnston told Plaintiff he was required to register as a sexual offender in Idaho, based on his Alaska conviction, and Johnson questioned whether Plaintiff had submitted quarterly registration reports.  Sergeant Kent Johnston reviewed Plaintiff's criminal history report and the Registration Act and determined that the Alaska offense was substantially similar to a registerable offense in Idaho.  Johnson Aff. (Dkt. 21-5).  When making this determination, Johnston had information that Plaintiff was required to register as a sex offender in Oregon.  Based on Johnston's belief that Plaintiff was required to register in Idaho, he correctly informed Plaintiff that failure to register is a felony offense.  *See* Idaho Code § 18-8311.[4]  Thus, the information Johnston provided about the consequence of failure to register, if indeed Plaintiff was required to register, was accurate and did not violate Plaintiff's rights.

Likewise, according to Plaintiff, the Idaho Sex Offender Registry Department notified Plaintiff in July 2007 that he had to register quarterly.  Pl.'s Aff., ¶ 11 (Dkt. 24-2).  Accordingly, Deputy Dale Johnson, when phoning Plaintiff about quarterly registration, appears to have been

---

[4] "An offender subject to registration who fails to register, verify his address, or provide any notice as required by this chapter shall be guilty of a felony and shall be punished by imprisonment in the state prison system for a period not to exceed ten (10) years and by a fine not to exceed five thousand dollars ($5,000)."  Idaho Code § 18-8311.

**MEMORANDUM DECISION AND ORDER - 8**

acting in accord with the requirement imposed by the Registry Department and providing

accurate information about the consequences of failing to submit the quarterly registration.[5]

In short, nothing in the record indicates that Johnston or Johnson acted in an arbitrary

manner in advising Plaintiff about the registration requirements. *See Shanks v. Dressel*, 540 F.3d

1082, 1088 (9th Cir. 2008); *Akella v. Michigan*, 67 F.Supp. 2d 716, 732 (E.D. Mich. 1999)

(rejecting due process claim related to sexual offender registration statute). However, even if

there is a genuine issue of material fact as to whether Johnston and/or Johnson acted in an

arbitrary manner, they are entitled to qualified immunity for their actions in connection with the

registration issue, as discussed below.[6]

### 3.    Plaintiff's Reputation

Plaintiff asserts a "due process liberty interest in his reputation as a citizen." Complaint,

¶ 21.  He argues that Deputy Sciortino's statement that Plaintiff is a child molester (which

---

[5]  Although Plaintiff alleges that Deputy Dale Johnson accused Plaintiff of burglary and assault and "harassed" Plaintiff about being a sex offender, after Plaintiff was informed by the Idaho Sex Offender Registry Department that he did not need to register, Pl.'s Aff., ¶ 13 (Dkt. 24-2), he provided few details about this allegation and provided no argument specific to it in his memorandum opposing summary judgment.  The verbal comments about Plaintiff's status as a sex offender who at one time was required to register, which appear to be the basis for allegations against Johnson, do not support a constitutional violation recoverable under Section 1983. *See, e.g., Slagel v. Shell Oil Refinery*, 811 F.Supp. 378, 382 (C.D.Ill. 1993) (explaining that "[v]erbal harassment and abusive language, while 'unprofessional and inexcusable,' are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983").

[6]  Plaintiff has not brought a claim against the State of Idaho regarding the process provided for individuals to challenge a determination of whether an offense is substantially similar to one of Idaho's listed offenses, requiring registration. *See, e.g.*, *Creekmore v. Texas*, 341 F. Supp. 2d 648, 666 (E.D. Tex. 2004) (explaining that convict was "entitled to due process when state officers determined whether his . . . offenses are substantially similar in their essential elements to listed Texas offenses").  The Idaho Administrative Procedure Act at Title 10, Chapter 3, provides a process for convicts to challenge the registration requirement.

**MEMORANDUM DECISION AND ORDER - 9**

Sciortino denies making) rises to the level of a constitutional violation. The United States

Supreme Court has held that defamation or injury to reputation alone is not protected by the

procedural guarantees of the Fourteenth Amendment. *See Paul v. Davis*, 424 U.S. 693, 712

(1976) (finding no due process violation for asserted reputational harm where plaintiff claimed a

§ 1983 violation for the inclusion of his name and picture on a flyer entitled "Active Shoplifters"

when plaintiff had not been convicted of shoplifting).

 Circumstances similar to those in the *Paul* case exist here; in both cases the plaintiff had

his name publicly associated with a crime he either had not been convicted of or was not

required to have published on a list of certain offenders. Plaintiff here has failed to allege or

demonstrate any tangible loss to his interests and fails to state a due process claim. *See id.* at 711

(requiring a removal or alteration of a previously recognized state "liberty" or "property"

interest, other than defamation, to state a due process claim); *see also, e.g.*, *Sturm v. Clark*, 835

F.2d 1009, 1012 (3d Cir. 1987) (interpreting *Paul* to require "the alteration or extinguishment of

a more tangible interest" in addition to defamation).

 However, Sciortino's comments, as discussed below, may provide support for an

unreasonable seizure claim under the Fourth Amendment.

 **4.**   **Allegations Related to Plaintiff's Money**

 Plaintiff asserts that Deputy Sciortino "stole" $100 from him when he was arrested, and

Sciortino denies taking any money. Compl., ¶ 15; Sciortino Aff., ¶ 15 (Dkt. 21-4). The actual

facts may be as one party asserts, or may fall somewhere in the middle. Plaintiff reports that

Deputy Sciortino allowed a passenger in Plaintiff's car to keep a $100 bill that belonged to

Plaintiff, even though Plaintiff informed Sciortino that it was his money.[7]  Pl.'s Aff., pp. 4-5.

While it is true that, even according to Plaintiff's version of the facts, Sciortino did not have

physical possession of the money, under Plaintiff's version Sciortino still exercised control over

the money by determining who should take possession of it.

In his opposition brief, Plaintiff relies on the Fourth Amendment to support his claim that

Sciortino unlawfully took Plaintiff's money during an arrest.  *See* Opp. Br., p.4 (Dkt. 24).  The

Fourth Amendment protects the people from unreasonable searches and seizures of "their

persons, houses, papers, and effects," *Soldal v. Cook County*, 506 U.S. 56, 62 (1992), and a

"seizure" of property occurs when "there is some meaningful interference with an individual's

possessory interests in that property," *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

Taking into account that direct testimony of the non-movant (here, Plaintiff) must be believed,

however implausible, *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999), Plaintiff's

allegation—that Sciortino unreasonably deprived him of property by his actions related to the

discovery of $100 in the back seat of the patrol car—sufficiently states a claim under section

1983.  Thus, summary judgment is precluded by the existence of a material fact as to whether

Sciortino deprived Plaintiff of the money by allowing someone else to take it at a time when

Plaintiff was detained and despite Plaintiff's protests that it was his money.

---

[7]  In stating these facts and considering whether a claim has been sufficiently stated, the
Court has not considered any statements Plaintiff alleges were made by Stephanie Henry, the
individual Plaintiff claims Officer Sciortino allowed to keep Plaintiff's money.  The Court agrees
with defense counsel that these statements, to the extent they are intended to support the truth of
the matter stated, are inadmissible hearsay.  *See* Fed. R. Enid. 801(c).  Plaintiff's counsel
submitted no argument that an exception to the hearsay rule applies.

**MEMORANDUM DECISION AND ORDER - 11**

Defendants also argue that Plaintiff did not adequately assert in his Complaint a Fourth Amendment claim for the alleged misappropriation of money. Plaintiff's Complaint alleges that Sciortino stole money from him and lists the Fourth Amendment in the Complaint's introductory paragraph. Even though he mentions the money only in the paragraphs alleging that Defendants "discriminated" against him by "misappropriating his money" (¶ 19), and that he was deprived of due process and his property interests (¶ 20), he re-alleges all of the Complaint's allegations in relation to his 1983 claim (¶ 17), and he provided sufficient factual allegations to support a Fourth Amendment claim for seizure of his property. The Court finds the factual allegations sufficiently connected to the Fourth Amendment to properly raise a claim that Plaintiff's money was improperly disposed.[8] Although not artfully pled, all of the information to support

---

[8] Although not raised in a motion to dismiss, the standards for evaluating motions to dismiss claims in a complaint are instructive. Federal Rule of Civil Procedure 8(a) sets the pleading standard for claims for relief. "Under the liberal rules of pleading, a plaintiff need only provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Sagana v. Tenorio*, 384 F.3d 731, 736 (9th Cir. 2004) (quoting Fed. R. Civ. P. 8(a)). The pleadings need only give the opposing party fair notice of a claim and the claim's basis. *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Sagana*, 384 F.3d at 736; *Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir. 2001). The pleadings are to "be construed as to do substantial justice," and "no technical forms of pleading . . . are required." Fed. R. Civ. P. 8(e)(1), 8(f); *Sagana*, 384 F.3d at 736; *Fontana*, 262 F.3d at 877. "Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief." *Fontana*, 262 F.3d at 877.

The Court, however, recognizes that "[c]ontext matters in notice pleading [and [f]air notice under [Rule 8(a)] depends on the type of case." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir .2008). The Supreme Court's decision in *Ashcroft v. Iqbal*, ---U.S. ----, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) has added that "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949-50. Another recent decision by that Court explained that a complaint "does not need detailed factual allegations,[but] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, this inquiry focuses on a need for factual allegations to "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if

Plaintiff's Fourth Amendment property seizure claim was in the Complaint and in the record, as developed by counsel during discovery and depositions.

### 5. Claims Related to Deputy Sciortino's Alleged Actions

#### a. Alleged Sexual Harassment

Plaintiff alleges that he was verbally and physically/sexually abused by Deputy Sciortino during a December 2007 arrest. Pl.'s Aff. (Dkt. 24-2). Specifically, Plaintiff avers that Deputy Sciortino, when patting Plaintiff down at the jail, "cupped [his] testicles and penis from behind, and through and between [Plaintiff's] buttocks and rolled them around in his hand," and that Sciortino told Plaintiff he "would get used to this kind of treatment pretty quickly in prison." *Id.* at ¶ 23. Sexual misconduct by a police officer toward another generally is analyzed under the Fourteenth Amendment; however, where the police officer's sexual harassment is of a criminal suspect during a continuing seizure, the conduct is analyzed under the Fourth Amendment. *Fontana v. Haskin*, 262 F.3d 871, 882 (9th Cir. 2001). The Fourth Amendment provides protection from unreasonable seizures and intrusion on one's bodily integrity.[9] *Id.* at 878.

#### (i) Fourth Amendment Claim

Plaintiff asserted in his Complaint that he is entitled to due process to be free from arbitrary action jeopardizing "his property interest in his right to privacy, his right to be free of

---

doubtful in fact)." *Id.* Here, although Plaintiff could have more artfully and clearly stated his allegations and claims in his Complaint, there is enough information in the Complaint to state proper grounds for relief under the Fourth Amendment and Section 1983 related to the factual allegations presented.

[9] Although Plaintiff's brief also cites to the Fourteenth Amendment to support his claims against Sciortino (*see* Dkt. 24, p. 3), at the hearing of this matter Plaintiff's counsel agreed that the Fourth Amendment governed his claims. The Court, therefore, will not discuss Plaintiff's Fourteenth Amendment argument.

defamation, and his right to be free of violations of his rights under the Fourteenth Amendment."
Compl., ¶ 20. Defendants argue that Plaintiff's Complaint does not mention a Fourth Amendment
claim and request that the Court therefore strike Plaintiff's excessive force claim. Reply, p. 2
(Dkt. 28). Although the Complaint includes a paragraph stating that Plaintiff is seeking redress
for violations of the "rights protected by the Fourth . . . Amendment[]," Compl., ¶ 1, that alone is
not enough to adequately assert a Fourth Amendment claim. However, Plaintiff also alleges the
factual context for his claim, that "for a brief period of time, [he] was held against his will and
assaulted by the oppressive atmosphere of intimidation caused by the presence of Defendant
Charles Sciortino" and also refers to the "seizing of his person." *Id.* at ¶ 22. This language ties
Plaintiff's claims to the Fourth Amendment's prohibitions against unlawful seizures.

Additionally, Plaintiff's statement of Count I, "Deprivation of Constitutional Rights and
Privileges (42 U.S.C. @ 1983)" starts with paragraph 17, which "incorporates by reference
paragraphs 1 through 17." Paragraph one refers to the Fourth Amendment. *See Fontana v.
Haskins*, 262 F.3d 871, 876 (9th Cir. 2001) (concluding that plaintiff's complaint sufficiently
alleged a civil rights violation based on allegedly harassing behavior relying, in part, on a
paragraph incorporating other paragraphs of that complaint). For all these reasons, the Court
finds that Plaintiff's allegations sufficiently raise the Fourth Amendment issue as to an
unreasonable seizure claim.

### (ii) Plaintiff has Alleged Actionable Conduct

"Beyond the specific proscription of excessive force, the Fourth Amendment generally
proscribes 'unreasonable intrusions on one's bodily integrity,' *Headwaters Forest,* 240 F.3d at
1199, and other harassing and abusive behavior that rises to the level of 'unreasonable seizure.'"

*Fontana*, 262 F.3d 871, 878-79 (determining that police officer's "sexual verbal and physical predation against a handcuffed arrestee" on ride to police station violated Fourth Amendment). While allegations of sexual bodily intrusion may be actionable as a violation of the Fourth Amendment, *de minimis* bodily intrusions are constitutionally reasonable. *Id.* at 880. "[N]ot every truthful allegation of sexual bodily intrusion during an arrest is actionable as a violation of the Fourth Amendment." *Id.*

At the hearing, the issue was distilled to whether Deputy Sciortino's alleged actions were a *de minimis* intrusion. *See, e.g., Bell v. King County*, No. C07-1790-RSM, 2008 WL 4779736, *2 (W.D.Wash., Oct. 31, 2008) (determining that officers' slapping the plaintiff "once on the butt constitutes a *de minimis* bodily intrusion and therefore must be deemed constitutionally reasonable"). Plaintiff explained twice during his deposition that the incident with Sciortino lasted only a "brief second" and that Deputy Sciortino did not squeeze him hard, but it was "uncomfortable."[10] Mumford Supp. Aff., Ex. A, pp.156-59 (Dkt. 28-2).

"[N]ot every intrusion, touching, discomfort or embarrassment during an arrest is actionable as a violation of the Fourth Amendment. Some of these acts may be provably accidental or just too insignificant and thus within the range of constitutionally reasonable." *Hicks v. Moore*, 422 F.3d 1246, 1253-54 (11th Cir. 2005) (accepting plaintiff's claim that she as uncomfortable with the fingerprinting process when her body was touching the officer's, but finding the conduct was limited and coincidental and, thus, not unreasonable under the Fourth

---

[10] Although Plaintiff's response brief states that Sciortino's actions caused him extreme pain, he does not state that in his affidavit. Because the factual assertion in the brief is unsupported by evidence in the record before the Court on summary judgment, the unsupported statement in the response brief will not be considered.

**MEMORANDUM DECISION AND ORDER - 15**

Amendment). Here, if the conduct were just the brief cupping of Plaintiff's testicles, the Court

might be inclined to find the intrusion was *de minimis* or accidental, not rising to the level of a

constitutional deprivation. However, Plaintiff goes on to assert that Sciortino rolled Plaintiff's

testicles around in his hand and Sciortino commented that Plaintiff would get used to this kind of

treatment in prison. Pl.'s Aff, ¶ 23 (Dkt. 24-2). This alone is likely enough to survive summary

judgment, but there are also allegations that Sciortino had first "verbally abused" Plaintiff in the

patrol car, telling Plaintiff he was a child molester and then taking a detour on the way to the jail

to stop by Plaintiff's home and tell the neighbors Plaintiff was a "child molester" and their kids

were in danger being around him.

Many courts, including the Ninth Circuit, have stated that "verbal harassment or abuse . . .

is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." *Oltarzewski v.*

*Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (citation and internal quotation marks omitted). *See*

*also Ellingburg v. Lucas*, 518 F.2d 1196, 1197 (8th Cir. 1975) (holding that damages for

defamation, allegedly incurred when defendant called plaintiff by an obscene name, are not

recoverable under § 1983); *Evans v. City of Zebulon*, 351 F.3d 485, 495-96 (11th Cir. 2003)

(citing several cases in which courts determined verbal abuse does not usually rise to a level of

constitutional violation).[11] However, other courts have explained that "[t]he whole course of

conduct of an officer in making an arrest or other seizure-including verbal exchanges with a

---

[11] *See Martin v. Ross*, No. 1:08-CV-199-TS, 2008 WL 5070440, *3 (N.D. Ind. Nov. 25, 2008) *unreported* ("The Fourth Amendment, however, does not protect citizens from being generally harassed and treated unfairly or unprofessionally by a police department or individual police officers; it protects citizens against unreasonable searches and seizures."); *Munyon v. Henson*, No. 08-2194, 2010 WL 480881, *6, No. 08-2194, (C.D. Ill. Feb. 2, 2010) *unreported* (concluding that defendant's "conduct, however rude and unprofessional, does not rise to the level of a Fourth Amendment violation").

subject-must be evaluated for Fourth Amendment reasonableness in light of the totality of the circumstances." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1194 (10th Cir. 2001). In *Holland*, the Tenth Circuit explained that "[w]hile it seems unlikely that harsh language alone would render a search or seizure 'unreasonable,' verbal abuse may be sufficient to tip the scales in a close case." *Id.*

The case at hand is just such a close case. There was not simply verbal abuse but also an alleged improper touching, albeit of very short duration, and the alleged verbal comments preceded and also accompanied the touching. The trip to the jail involved an unnecessary stop by Plaintiff's residence. The Ninth Circuit has explained that "the trip to police station is a 'continuing seizure' during which the police are obliged to treat their suspects in a reasonable manner." *Fontana*, 262 at 879-80.

"The Fourth Amendment's requirement that a seizure be reasonable prohibits more than the unnecessary strike of a night stick, sting of a bullet, and thud of a boot." *Fontana*, 262 F.3d. at 878. "The 'touchstone of the Fourth Amendment is reasonableness.'" *U.S. v. Willis*, 431 F.3d 709, 714 (9th Cir. 2005) (quoting *Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991)). Taking Plaintiff's allegations and statements as true, the Court cannot say that the extended seizure to stop in Plaintiff's neighborhood, and the following search and cupping or rolling of Plaintiff's testicles, would be reasonable as a matter of law under the Fourth Amendment. The Fourth Amendment bars intrusion into the body "which are not justified in the circumstances, or which are made in an improper manner." *Schmerber v. California*, 384 U.S. 757, 768 (1966) ("The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State"). Accordingly, summary

judgment is denied on this issue and what remains is to determine whether qualified immunity

can support the grant of summary judgment.

**D.      Qualified Immunity**

Defendants argue they are entitled to qualified immunity.  In § 1983 actions, the doctrine

of qualified immunity protects state officials from personal liability for on-the-job conduct so

long as the conduct is objectively reasonable and does not violate clearly-established federal

rights.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted).  A state official may

be held personally liable in a § 1983 action if he knew or should have known that he was

violating a plaintiff's clearly-established federal rights.  *Id.*  The qualified immunity standard

"gives ample room for mistaken judgments by protecting all but the plainly incompetent or those

who knowingly violate the law."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

A qualified immunity analysis consists of two prongs: (1) whether the facts as alleged by

plaintiff establish a violation of a constitutional right, and (2) whether that right was clearly

established given the state of the law at the time of the alleged misconduct.  *Pearson v. Callahan*,

---U.S. ----, ---- - ----, 129 S.Ct. 808, 815-16, 172 L.Ed.2d 565 (2009), citing *Saucier v. Katz*, 533

U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  Courts may "exercise their sound

discretion in deciding which of the two prongs of the qualified immunity analysis should be

addressed first in light of the circumstances in the particular case at hand."  *Id.* at 818.

As to the second prong—whether the law was clearly established—that inquiry "must be

undertaken in light of the specific context of the case, not as a broad general proposition."

*Saucier*, 533 U.S. at 201.  The Court must consider the "objective legal reasonableness of the

action, assessed in light of the legal rules that were clearly established at the time it was taken."

*Pearson*, --- U.S. at ----, 129 S.Ct. at 822, quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999). In other words, should a reasonable officer have known that his conduct was unlawful in the circumstances.

When a defendant asserts qualified immunity at the summary judgment stage, the plaintiff must produce evidence sufficient to create a genuine issue of fact regarding whether the defendant violated clearly established law. *Johnson v. Fankell*, 520 U.S. 911, 915 (1997).

**1.      Registration Requirement**

An officer acting pursuant to a duly enacted statute is ordinarily entitled to qualified immunity, unless the officer enforces the statute in an egregious manner or a manner that a reasonable officer would recognize exceeds the bounds of the statute. *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994). Defendants argue that Johnston was acting pursuant to the Registration Act, so he is entitled to qualified immunity. Even though Johnston was making an assessment under that Act, he was mistaken in his belief that it applied to Plaintiff. However, it is only if that mistake or his actions exceeded the bounds of the statute that qualified immunity would not apply. None of Plaintiff's statements or other evidence in the record indicates that Johnston's actions were egregious or not akin to what a reasonable officer would recognize and do. The same holds true with regard to Deputy Johnson, who phoned Plaintiff to ask whether he had submitted quarterly reports. Even under Plaintiff's version of events, a reasonable officer, who had reason to believe a person was required to register as a sexual offender and/or submit reports, does not exceed the bounds of the statute by informing a person about the duty and the consequences of failing to register. The State has provided a process for persons to challenge the registration requirement and Plaintiff here successfully challenged his

registration. Accordingly, Officers Johnston and Johnson are entitled to qualified immunity and they are granted summary judgment in their favor on all of the claims against them raised in Plaintiff's Complaint.

### 2. Fourth Amendment Claims Against Deputy Sciortino

Defendant Sciortino argues that the state of law was not so well settled in December of 2007 that a reasonable officer would have known "that a fleeting, and painless, touching of an arrestee['s] genitalia, intentional or not, during a search incident to arrest would constitute a Fourth Amendment violation." Reply, p. 8 (Dkt. 28). In support, Sciortino cites to the *Bell* decision that "a single instance of brief, but completely unnecessary, sexual touching" did not violate the Fourth Amendment. *See, e.g., Bell v. King County*, No. C07-1790-RSM, 2008 WL 4779736, *2 (W.D.Wash., Oct. 31, 2008). A slap on the butt is different in degree from the cupping and squeezing of a person's testicles. The determination of whether the force and methods used to effect a seizure was reasonable requires a case-specific balancing of the "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Graham v. O'Conner*, 490 U.S. at 396 (citation and internal quotation mark omitted).

Although the search of Plaintiff was at the jail and incident to his arrest, a reasonable officer should have known that cupping an arrestee's testicles and/or rolling them around might violate the Fourth Amendment. Additionally, this conduct came along with a course of conduct in which it is alleged that Officer Sciortino, after arresting Plaintiff for a possible driving under

the influence charge, took a detour to drive by Plaintiff's house and contact his neighbors.[12]  A

reasonable officer should have known that it might violate the Fourth Amendment's restriction on

unreasonable seizures to take a side trip totally unrelated to the offense for which the Plaintiff was

being arrested and then to inform bystanders that Plaintiff was a child molester, a statement that

was untrue.  Accordingly, qualified immunity does not provide a basis for summary judgment in

favor of Deputy Sciortino.  In making this determination, the Court is not making any comment

on whether Plaintiff's allegations are true.  However, Plaintiff has submitted enough evidence

into the record to overcome the request for summary judgment related to his 2007 arrest.

### III.  ORDER

Based upon the foregoing, IT IS HEREBY ORDERED that Defendants' Motion for

Summary Judgment (Dkt. 21) is GRANTED in part and DENIED in part.  All of Plaintiff's

claims against Kootenai County and the Kootenai County Sheriff, Rocky Watson, are dismissed,

with prejudice.  Defendants Johnston and Johnson are granted summary judgment on all of the

claims asserted against them in Plaintiff's Complaint.  To the extent Plaintiff seeks to maintain an

equal protection claim against Deputy Sciortino, summary judgment is granted to Defendant

Sciortino on that claim.  The only claims remaining are Plaintiff's Fourth Amendment claims

against Defendant Sciortino.

_____

[12]  Four years before the Officer Sciortino arrested Plaintiff, the Eleventh Circuit
discussed verbal comments in connection with searches, determining that it was not clearly
established that verbal abuse could be sufficient, along with intrusiveness of a strip search, to
violate constitutional rights.  *Evans v. Zebulon*, 351 F.3d 485, 495-96 (11th Cir. 2003).  Thus,
some case law existed indicating that verbal abuse could be coupled with physical contact and
rise to the level of a constitutional violation.  *See also Holland v. Harrington*, 268 F.3d 1179,
1194-96 (explaining in 2001 that "[i]n evaluating the Fourth Amendment reasonableness of a
seizure, the officers' verbal interaction as well as their physical conduct become part of the
totality of the circumstances to be considered").

**MEMORANDUM DECISION AND ORDER - 21**

On or before **July 20, 2011**, counsel for each party shall submit a list of available trial dates for September 2011 through January 2012. Thereafter, the Court will issue an order setting trial.



DATED:  **July 6, 2011**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge